**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GLENN SINGLETON, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 17-17423** |
| **GREG CHAMPAGNE, ET AL** | **SECTION: "B"(3)** |

## ORDER AND REASONS

Before the Court are Defendants' "Motion to Dismiss" (Rec. Doc. 8), Plaintiffs' "Response in Opposition" (Rec. Doc. 11), and Defendants' "Reply" (Rec. Doc. 14). For the reasons discussed below,

**IT IS ORDERED** that the motion to dismiss is:

(1) **GRANTED in part** dismissing without objection plaintiffs' Section 1983 claims and claims under La. Civ. Code art. 2315 against defendants Champagne and Schwartz;

(2) **GRANTED in part** dismissing municipal and official capacity claims against remaining defendants; and

(3) **DENIED** in part relative to the La. Civ. Code art. 2320 based claim against defendant Champagne.

All parties agree and we find as viable the individual capacity claims under Section 1983 and La. Civ. Code art. 2315 against defendants Carter, April, Tabora, Tiliakos, and Tennison.

1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On December 21, 2016, deputies for the St. Charles Parish Sherriff's Office[1] approached 64 year old Plaintiff Glenn Singleton's ("Plaintiff GS") home in Ama, Louisiana. Rec. Doc. 1 at 3. Plaintiff GS was exiting his driveway with his daughter when he observed the Deputies place his son, Glenn Jr., his daughter-in-law, and his granddaughter in the sheriff vehicle. Rec. Doc. 1 at 3. The Deputies then entered the 229 Allen Drive residence without a warrant. Rec. Doc. 1 at 3. Deputy Carter stated "this is the police." Rec. Doc. 1 at 3. Plaintiff's other son, Jaren Singleton, and his girlfriend, Cortney Madere, were inside. They were taken outside, handcuffed, and placed against Jaren's vehicle. Rec. Doc. 1 at 3. Jaren asked the reason for his being handcuffed and was told to "wait and see" Rec. Doc. 1 at 3.

Plaintiff GS made a verbal effort to calm Jaren and proceeded to the porch. Deputy Carter followed him. Rec. Doc. 1 at 4. Plaintiff GS informed the Deputy that he was on private property and that the Deputy was not authorized to come onto the property. Rec. Doc. 1 at 4. Plaintiff GS entered his home and shut the door.

---

[1] Named herein as defendants are St. Charles Parish Officers/Deputies Derrick Schwartz, Daniel April, Jaronne Carter, Allen Tabora, Kevin Tennison, and Jason Tiliakos; Sheriff Greg Champagne is also a named defendant.

2

Rec. Doc. 1 at 4. Deputy Carter subsequently forced his way into the home, causing damage to the front door. Rec. Doc. 1 at 4.

Inside the residence, another one of Plaintiff GS's sons, Ravon, asked why Deputy Carter was barging into the home and was told to "get the f*** out the way." Rec. Doc. 1 at 4. Deputy Carter, assisted by Deputies Tabora, Tennison, April, and Tiliakos, then threw Plaintiff GS against the wall and punched him in the back, causing injury to his left arm and shoulder. Deputy Carter pulled on the injured arm while Deputy Tabaro withdrew Plaintiff GS's cell phone from his person. Rec. Doc. 1 at 4. At this point, it is apparent that the Deputies exited the home with Plaintiff GS.

While the above events were taking place, Plaintiff Mark Singleton ("Plaintiff MS") had been inside the residence doing repair work. Rec. Doc. 1 at 5. Plaintiff MS heard the voices of his brother's Jaren and Ravon and became aware of the presence of law enforcement. Rec. Doc. 1 at 5. Plaintiff MS exited the home with his hands in the air. Rec. Doc. 1 at 5. Deputy Schwartz, who was known previously by Plaintiff MS, instructed Plaintiff MS to stay put and that he would explain everything. Rec. Doc. 1 at 5. Plaintiff MS was then struck from behind by Deputies Taboro and April. Rec. Doc. 1 at 5. Deputy Taboro threw Plaintiff MS to the ground and dragged him, while other Deputies proceeded to punch him.

Plaintiff MS was arrested and taken to St. Charles General Hospital. Rec. Doc. 1 at 6. After release, he was taken to jail and charged with (1) resisting arrest by violence and (2) battery on a police officer. At a preliminary hearing, it was determined that there was lack of probable cause and Plaintiff was released. Plaintiff was diagnosed with a chipped fracture in his right hand after his release from custody. Rec. Doc. 1 at 6. The Deputies had also pulled several locks of Plaintiff MS's hair from his scalp. Rec. Doc. 1 at 5.

Plaintiff GS was also arrested and taken to St. Charles General Hospital. There he was evaluated, and upon release, taken to prison. Plaintiff GS was charged with (1) interfering with an investigation and (2) resisting an officer with force and violence. Plaintiff GS spent one night in jail. At a preliminary hearing on the charges, the judge found no probable cause existed for Plaintiff GS's arrest. Rec. Doc. 1 at 4. He eventually underwent an arthroscopic cuff debridement because of his injuries and is still experiencing pain. Rec. Doc. 1 at 5.

## I. **THE PARTIES' CONTENTIONS**

Plaintiffs bring their claims against Defendant Deputies Carter, Schwartz, April, Tabora, Tilliakos, Tennison, and Champagne under Fourth and Fourteenth Amendments for unlawful search and seizure and false arrest; 42 U.S.C. § 1983 for a violation of their constitutional and civil rights; Louisiana

4

Civil Code Articles 2315 for physical injury brought on by excessive use of force; and Louisiana Civil Code Articles 2320 for the vicarious liability for all of the aforementioned claims of Sheriff Champagne under the doctrine of *respondeat superior.*

Defendants argue that Plaintiffs' official capacity claims should be dismissed because Plaintiffs have not sufficiently alleged liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) to support their § 1983 claims. Defendants assert that Deputy Schwartz and Sheriff Champagne should also be dismissed in their individual capacities. Defendants contend that the complaint fails to state on its face facts sufficient to give rise to a constitutional claim or tort claim, specifically, because Champagne was not present, and Schwartz was only mentioned three times in the complaint. In the alternative, Defendants argue that Schwartz and Champagne are entitled to a qualified immunity defense because the facts do not sufficiently allege that they violated the Plaintiffs' constitutional rights. Finally, Defendants maintain that vicarious liability is not a viable argument under § 1983.

II. **LAW AND ANALYSIS**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim may be granted when "a plaintiff fails to allege sufficient facts that state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt.,*

5

*LLC.* 657 F.3d 252, 254 (5th Cir. 2011); *see also* FRCP 12(b)(6). A court must accept the well-pleaded complaint as true and construe ambiguities in the light most favorable to the plaintiff. *Id*. However, conclusory allegations or mere restatements of the elements of a cause of action will not survive a motion to dismiss. *See Bell Atlantic Corp v. Twombly,* 550 U.S. 544, 555 (2007). The facts of the complaint must support a plausible inference that plaintiff has a right to relief. *Id*. The plausibility standard requires more than a mere possibility that plaintiff has been unduly wronged. *Id*. The plaintiff must carry his burden of proof in order to "nudge [his] claim across the line from conceivable to plausible." *Id*. at 570.

    a.    <u>**Official Capacity Claims under 42 U.S.C. § 1983**</u>

42 U.S.C. § 1983 provides a remedy ("action at law, suit in equity, or other proper proceeding for redress") for those who have suffered abuses at the hand of an official acting under the color of law. *Monroe v. Pape*, 365 U.S. 167 (1961). The purpose of enacting 42 U.S.C. § 1983 was to provide an alternative method of protection in federal court when an administrator of state law fails to provide the protections granted by the Fourteenth Amendment as a result of prejudice, intolerance, or neglect.[2]

---

[2] *Greenwood v. Peacock*, 384 U.S. 808 (1966); *Baker v. McCollan,* 443 U.S. 137 (1979).

**Monell Liability**

A suit against an officer in his official capacity is the same as a suit against the entity of which the officer is an agent.[3] Such a claim requires *Monell* proof of an official policy as the cause of the constitutional deprivation. *Turner v. Houma Municipal Fire & Police Civil Service Board*, 229 F.3d 478, 483 (5th Cir. 2000)(citing *Monell v. Department of Social Services*, 436 U.S. 658 (1978)). Under 42 U.S.C. § 1983, *Monell* liability "requires proof of three elements: (1) a policymaker; (2) an official policy; (3) and a violation of constitutional rights whose moving force is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

First, a plaintiff must show that a "policymaker" promulgated the unconstitutional policy. A "policymaker" is an official who has final say in policy making decisions. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). It is undisputed that a sheriff is considered a policymaker under Louisiana law.[4] The

---

[3] The Supreme Court in *McMillian* explained that, "suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent,'" (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978)), and that victory in such an "official-capacity" suit "imposes liability on the entity that [the officer] represents," (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). *McMillian*, 520 U.S. at 785.

[4] *See Craig v. St. Martin Parish Sheriff*, 861 F.Supp. 1290, 1301 (W.D. La. 1994); La. Const., art. 5, § 27 ("[The sheriff] shall be the chief law enforcement officer in the parish.").

policymaker must have actual or constructive knowledge of the official policy or custom. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). The Fifth Circuit has held that "actual knowledge may be shown by such means as discussions at council meetings or receipt of written information." *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808-09 (5th Cir. 2017) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)). "Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Id*.

A plaintiff must next demonstrate that the unconstitutional conduct arises from a specific policy or custom. A "policy", for purposes of § 1983 liability, is a "statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking Deputies or by an official to whom the lawmakers have delegated policy-making authority." *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) (quoting *Bennett*, 735 F.2d at 862). Courts have defined custom as a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom

8

that fairly represents municipal policy." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)); *see also Matthias v. Bingley*, 906 F.2d 1047, 1054 (5th Cir. 1990).

Third, a plaintiff must demonstrate that the policy was a moving force behind the constitutional violation. It is not enough to allege the existence a custom or practice; a plaintiff must show other instances of approval of unconstitutional conduct by the policymaker.[5] Plaintiff must present the specific facts of prior instances, and a court cannot infer a persistent, widespread practice exists based on an isolated incident. *Id*.

**Respondeat Superior**

Plaintiffs assert in their opposition that they present a viable claim for relief under Louisiana's vicarious liability statute, Louisiana Civil Code Article 2320. Rec. Doc. 1 at 8; Rec. Doc. 11 at 5. They no longer assert any other state-based claims. However, the doctrine of respondeat superior is inapplicable under federal law to § 1983 actions.[6] Thus, a plaintiff must plead that

---

[5] *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) ("Allegations of an isolated incident are not sufficient to show the existence of a custom or policy.").

[6] *See Monell*, 436 U.S. at 691 (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel*, 127 U.S. 507, 515-516 (1888)("A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the sub-agents or servants or other persons properly employed by or under him, in the discharge of his official duties").

9

each Government-official defendant, through the official's own individual actions, has violated the Constitution.[7]

   1. **Sheriff Champagne**

Plaintiffs assert an official capacity claim against Sheriff Champagne, stating that Champagne "maintained and currently maintains an atmosphere within the Sheriff's Department which encourages 'official lawlessness' among the deputy sheriffs, the kind which is directly responsible for the needless excessive force administered to Plaintiffs, resulting in their sustaining significant injuries." Rec. Doc. 1 at 8. To survive a motion to dismiss, Plaintiffs must allege with specificity the policies of the St. Charles Sheriff's Department that led to the violations of their constitutional rights. They must bring evidence of a persistent practice or pattern to impose liability against the Sheriff in his official capacity. As stated above, Plaintiffs must demonstrate that the Defendant is a policymaker who has actual or constructive knowledge of an official policy or custom, and that the specific policy was a moving force behind the constitutional violation.

Under the first *Monell* requirement, the defendant must be "a policymaker" who has final policy making decision power. Sheriff

---

[7] "To state a claim on which relief may be granted, '[a] plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) quoting *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008).

Champagne is undoubtedly a policymaker under Louisiana law. Under the second element, Plaintiffs must evidence the specific policy or custom that brought about the constitutional violation and that the policymaker had actual or constructive knowledge of the official policy or custom. Here, Plaintiffs do not allege the existence of a written policy. Therefore, Plaintiffs must establish that the alleged practices or patterns were so widespread that they constituted a custom in the department. Plaintiffs' complaint does not allege sufficient facts needed for this court to plausibly infer that a custom or practice existed that gave rise to the purported violations of Plaintiffs' constitutional rights. Plaintiffs simply assert bare allegations that Sheriff Champagne "maintained an atmosphere" of lawlessness without providing any specific facts as to how this activity was carried out. Rec. Doc. 1 at 7. Plaintiffs do not allege that the Sheriff had actual or constructive knowledge of any alleged practices or customs that allegedly violated Plaintiffs' constitutional rights. Furthermore, Plaintiffs concede they have no plausible federal claims remaining for Monell or official capacity liability.

### Deputy Defendants

Plaintiffs' complaint does not allege that any of the Deputies have the power to implement policies or procedures at the St. Charles Parish Sheriff's Department. Further, under applicable Louisiana law—as described *supra*—it is implausible that any of the

11

Deputies is an "official policy maker" to meet the § 1983 standard. Consequently, the federally based official capacity claims against the Deputies should be dismissed.

### b. <u>Individual Capacity Claims</u>

An individual capacity claim will be able to survive dismissal where a claimant can show that an official was aware of the alleged violations.[8] Because Plaintiffs do not allege that Sheriff Champagne was either present or had any knowledge of the incident on December 21, their claims against him in his individual capacity should be dismissed. While Deputy Schwartz was present and aware of his fellow deputies' actions, Plaintiffs no longer seek to pursue claims against him for non-action.[9] The claims against him and the Sheriff will be dismissed. However, remaining defendant-deputies concede that individual capacity claims remain against them subject to further proceedings.

---

[8] *Colbert v. City of Baton Rouge*, No. 17-00028-BAJ-RLB, 2018 U.S. Dist. LEXIS 4069, at *39-40 (M.D. La. Jan. 8, 2018) (Middle District of Louisiana dismissed individual capacity claims against sergeants where plaintiff failed to allege sergeants were "personally involved or had knowledge of the alleged violations", but kept claims against other deputies who were aware of failure to monitor inmates' cells)

[9] In *Ringbauer v. Hebert*, No. 08-0115, 2009 U.S. Dist. LEXIS 80721, at *14-15 (W.D. La. July 13, 2009), plaintiffs brought a § 1983 claim against twelve deputy sheriffs for unlawful search and seizure and negligence after deputies entered their home, handcuffed them, and forced them to kneel outside while deputies searched the home without a warrant or probable cause. The Western District found that "dismissal of the claims against the Deputies in their individual capacities [wa]s inappropriate at th[at] stage of the litigation" where plaintiffs' pleading showed that the Deputies were "aware that their actions during the incident might violate the plaintiffs' clearly-established Fourth Amendment rights."

12

### c. **Punitive Damages**

Plaintiffs in their complaint pray that the court award "special, general, and punitive damages in an amount deemed fair and equitable." Rec. Doc. 1 at 8. However, it is well established that § 1983 does not allow an award of punitive damages against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270-71 (1981). As stated above, a § 1983 claim against an officer in his official capacity is really an action against a municipality. *Brown v. Strain*, 663 F.3d 245, 251 (5th Cir. 2011) citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005). Punitive damages may only be recovered against defendant employees of a municipality sued in their individual capacities. *Smith v. Wade*, 461 U.S. 30, 35, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983). Moreover, punitive damages in regard to Defendants in their official capacities are moot in view of above dismissals of federal-based official capacity claims.

New Orleans, Louisiana this 25th day of February, 2019.

_____
SENIOR UNITED STATES DISTRICT JUDGE